**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
Ryan B. Martin (State Bar No. 359876)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          lsironski@bursor.com
          rmartin@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail:  greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT MCLAUGHLIN, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br>     v.<br><br>ENCHROMA, INC.,<br><br>                      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1   Plaintiff Robert McLaughlin ("Plaintiff") brings this action on behalf of himself and all

2   others similarly situated against EnChroma, Inc. ("Defendant" or "EnChroma").  Plaintiff makes

3   the following allegations pursuant to the investigation of his counsel and based upon information

4   and belief, except as to the allegation specifically pertaining to himself, which are based on

5   personal knowledge.

6   ## NATURE OF THE ACTION

7   1.      This is a putative class action lawsuit on behalf of all purchasers of EnChroma

8   Glasses (the "Glasses").  The Glasses purportedly use an "optical lens technology that selectively

9   filters out wavelengths of light..." to help people with color blindness see the world normally.[1]

10  2.      Although the Glasses are offered in multiple shapes and styles and allegedly

11  designed to address different types of color blindness, the Glasses all utilize the same "technology"

12  and are substantially similar.

13  3.      Defendant repeatedly represents and warrants that its Glasses allow people with

14  color blindness to see color normally through phrases such as "see an expanded range of visible

15  colors"[2] or "bring colorful possibilities to all."[3]

16  4.      Unfortunately for consumers, an independent study conducted by the University of

17  Granada concluded that the technology in EnChroma lenses does not and cannot correct color

18  blindness in the ways Defendant represents.[4]

19  5.      Moreover, investigative journalism by YouTube account MegaLag has shown that

20  Defendant embarked on an extensive deceptive marketing and advertising campaign with staged

21  reaction videos, fake product reviews, flawed and misrepresented scientific research, and dishonest

22

23

---

24  [1] *How Do EnChroma Color Blind Glasses Work*, ENCHROMA, https://enchroma.com/pages/how-enchroma-glasses-work (last accessed Feb. 20, 2025).

25  [2] ENCHROMA, https://enchroma.com/ (last accessed Feb. 20, 2025).

26  [3] *About Us*, ENCHROMA, http://enchroma.com/pages/about-us (last visited Jan. 8, 2025).

27  [4] L. Gómez-Robledo, E. M. Valero, R. Huertas, M. A. Martínez-Domingo, and J. Hernández-Andrés, *Do EnChroma Glasses Improve Color Vision for Colorblind Subjects?*, 26 OPTICS EXPRESS 28693, 28691 (2018).

28

---

influencers to mislead consumers into believing that its Glasses have the ability to help color blind people see the full-spectrum of color for the first time.[5]

6.      Accordingly, Plaintiff brings claims against Defendant individually and on behalf of a Nationwide Class and California Subclass of all others similarly situated for: (1) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (4) Breach of Express Warranty; (5) Fraud; (6) Breach of Implied Warranty; and (7) Unjust Enrichment.

## **PARTIES**

7.      Plaintiff Robert McLaughlin is a citizen of California residing in Angelus Oaks, California, and intends to stay there.  On June 03, 2024, Plaintiff purchased a pair of the Rockridge Gunmetal Outdoor Deutan Glasses from the EnChroma website while he was in California.  Prior to his purchase, Mr. McLaughlin reviewed the warranties and representations made by Defendant on its website (described in detail below) and understood those representations and warranties to mean that the Glasses could provide certain color seeing benefits (described in detail below) (collectively, the "Color Correction Claims" or the  "Color Correction Benefits").  Plaintiff relied on those representations and warranties in choosing to purchase the Glasses for his brother who has deuteranomaly (green color blindness).  Unfortunately, Plaintiff's brother did not receive the Color Correction Benefits, even though he wore the Glasses as directed.  Plaintiff would not have purchased the Glasses had he known that Defendant's representations and warranties with regard to the Color Correction Claims were not true.  In making his purchase, Plaintiff McLaughlin paid a substantial price premium (i.e., the full price of the glasses) due to the false and misleading Color Correction Claims.  However, Plaintiff McLaughlin did not receive the benefit of his bargain because the Glasses were not capable of providing the Color Correction Benefits.

8.      Defendant EnChroma, Inc. is a Delaware corporation with its principal place of business in Berkeley, California.  EnChroma, Inc. manufactures, sells, markets, and/or distributes

---

[5] *See* MegaLag, *Exposing the Fake Science Behind Color Blind Glasses (Part 1)*, YOUTUBE (Dec. 1, 2023), https://www.youtube.com/watch?v=Ppobi8VhWwo.

various styles of EnChroma Glasses.  Accordingly, the actions and practices giving rise to this action were developed in and emanated from EnChroma, Inc. in California.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10.     This Court has general personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant maintains its principal place of business in this District.

## FACTUAL ALLEGATIONS

**A.      Background on Color Blindness**

12.     Inside of the eye is a tissue called the retina.[6]  The retina contains special cells called rods and cones.[7]  Rods and cones separate the wavelengths of light into three distinct colors – red, green, and blue – which our brain then uses in combination to determine what color the eye is perceiving.[8]  For example, if red and green rods and cones are stimulated, the brain will perceive the color  yellow.  Figure 1 below shows how these three colors allow us to see the full color spectrum.

---

[6] *Seeing Color*, AM. NAT. HIST. MUSEUM, https://www.amnh.org/explore/ology/brain/seeing-color#:~:text=Light%20travels%20into%20the%20eye,Cone%20cells%20help%20detect%20colors. (last accessed Feb. 24, 2025).

[7] *Id.*

[8] *Id.*

**Figure 1**

13.     Color blindness, often called color vision deficiency or CVD, means that a person sees colors differently.  For example, a person with color blindness may struggle to differentiate between certain colors.[9]  This is because colorblindness is the result of a mutation in the rods and cones which affects an individual's ability to see red, green, or blue wavelengths, and thereby skewing their perception of the color wheel.

14.     The most common kind of color blindness, and indeed is the one at issue here, is red-green color blindness.[10]

15.     There are two different types of red-green color blindness: deuteranomaly and protanomaly.  Deuteranomaly "is the most common type of red-green color vision deficiency. It makes certain shades of green look more red."[11]  This is due to a deficiency in the green cone that skews color perception to be red.

16.     Protanomaly, on the other hand, "makes certain shades of red look more green and less bright."[12]  With protanomaly, a red cone deficiency skews color perception green.

17.     The other types of color blindness are protanopia, deuteranopia, tritanomaly, tritanopia, and complete color vision deficiency.[13]  Like deuteranomaly or protanomaly, protanopia

---

[9] *Color Blindness*, NIH, https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/color-blindness (last accessed Feb. 21, 2025).

[10] *Id.*

[11] *Types of Color Vision Deficiency*, NIH, https://www.nei.nih.gov/learn-about-eye-health/eye-conditions-and-diseases/color-blindness/types-color-vision-deficiency (last accessed Feb. 21, 2025).

[12] *Id.*

[13] *Id.*

and deuteranopia also affect red-green color perception; however, with protanopia or deuteranopia, the cones for red or green color perception do not function at all.[14]

18.     Tritanomaly and tritanopia specifically affect blue color perception either by skewing it or removing it all-together.[15]  This is the only kind of color blindness not relevant to the issues herein.

19.     The final type of color blindness is complete color vision deficiency which, as the name suggests, removes all perception of color.[16]  Those who are affected by complete color vision deficiency see the world entirely in black and white.

20.     The primary symptoms of struggling with color blindness are having trouble discerning the difference between colors, shades of color, and color brightness.[17]

21.     Most people are born with color blindness, but it can also be caused by trauma to the eye.[18]  While anyone can have color blindness, men are significantly more likely.[19]

22.     Genetic color blindness is incurable.  Children or adults with colorblindness may need help differentiating between certain colors, especially in color-focused jobs such as photography or graphic design.[20]

23.     Nevertheless, many people live normal lives with colorblindness and often their symptoms are so mild that they do not even realize they have it until later in life.

**B.     Defendant's Marketing and Advertising Campaign**

24.     In 2016, Defendant and Valspar Corporation (a paint company) paired up in a marketing campaign touting EnChroma's newly developed Glasses, representing that the Glasses provided the ability for consumers with color blindness to see color.[21]

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Color Blindness*, *supra* note 9.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *See e.g.*, EnChroma, *EnChroma & Valspar – Color For The Colorblind*, YOUTUBE (Mar. 28, 2019), https://www.youtube.com/watch?v=pWtv9pjiLWs.

---

25.     The campaign took place, in part, through a video in which Donald McPherson, EnChroma's Co-Founder, says, "We developed these glasses to enable colorblind people see color for the first time in their lives."[22]

26.     As part of the campaign, EnChroma also flooded the internet with videos of people suddenly being able to see color when trying on the Glasses for the first time and being overcome with extreme emotional reactions.

27.     These videos were an absolute hit with numerous news articles covering the campaign and EnChroma even earned an award for best use of viral marketing in 2016 from its stunt.

28.     Little did people know, however, that the marketing was false and many of these videos were entirely staged.  Figures 2–4 provide a sample of EnChroma's various marketing statements.



**Figure 2**

_____

[22] *Id.* at 00:01:25–00:01:30.





**Figure 3**



**Figure 4**

29.    To back up these claims, some of EnChroma's promotional videos portrayed children or people supposedly seeing color for the first time and identifying the colors of different balloons.[23]  But if these people have never been able to see those colors before in their lives, they would not suddenly be able to say, "that's green" or "this one is orange."

30.    In one video, on EnChroma's very own press kit page used for media advertising, a young boy misidentifies the colors of a number of balloons in front of him, only to get the colors right when he puts on EnChroma's Glasses.[24]  But a closer look at the video shows that the incorrect colors, which the boy first read out, **were written on the balloons** (see Figure 5, below). He was coached to first read the wrong colors and then identify them correctly once he puts on the glasses.



**Figure 5**

31.    Defendant also went so far as to rope influencers into its misleading marketing scheme.  In fact, the YouTube video that started Logan Paul's career[25] was an emotional

---

[23] *See e.g.*, EnChroma, *EnChroma: Color Brings Us Together #ColorUnites* (Apr. 07, 2020), at 00:00:32-00:00:41, https://www.youtube.com/watch?v=2ZDCZ9d-zlM.

[24] ENCHROMA, HTTPS://ENCHROMA-FILES.S3-US-WEST-1.amazonaws.com/Downloadable+videos+for+UK/Balloon+naming.mp4 (last accessed Feb. 21, 2025).

[25] Logan Paul is a highly influential public figure who, along with his brother Jake Paul, have gathered a massive social media following.  Just recently, HBO began airing a series about their lives called "Paul American."

promotional video putting on the Glasses and being able to see color for the first time.[26]  But three years later, after using that viral video to propel him into the public eye, Logan Paul admitted that he actually saw "no difference" when using the glasses.[27]

32.    Additional investigative journalism into other influencers that promoted EnChroma has revealed their "reactions" to be false and misleading as well.[28]

33.    Moreover, looking at Trustpilot, an online resource providing transparent reviews of businesses, nearly half of EnChroma's reviews fall between one and three stars with a third of all reviews being one star.[29]



**Figure 6**

34.    Reviewer "AP" says that the Glasses are a "[t]otal Scam!  They forged a bunch of false pseudo-scientific papers and reports claiming that these glasses can actually help.  However, anyone that knows the basic optics should know that it is impossible to make the color-blinded eye cone cells to distinguish between two color spectra by a simple color filter (that by the way can be

---

[26] *See* Logan Paul, *THESE GLASSES CURED MY COLORBLINDNESS!*, YOUTUBE (Nov. 29, 2016), https://www.youtube.com/watch?v=4TiITQDPClI.

[27] IMPAULSIVE Clips, *LOGAN PAUL SPEAKS ON THE COLOR BLIND VIDEO*, YOUTUBE (Dec. 15, 2019), https://www.youtube.com/watch?v=VzEeyPZ4Llw.

[28] *See* MegaLag, *supra* note 5, at 00:06:23-00:08:15.

[29] *See EnChroma*, TRUSTPILOT, https://www.trustpilot.com/review/www.enchroma.com (last accessed Feb. 21, 2025).

purchased for way cheaper elsewhere).  All those reaction videos of people crying when they first

using the glasses are all fake! Just do your research before wasting your money."[30]

35.     Similarly, consumer Damien Jones says that the glasses are a "[c]omplete scam, this

is a company built on fraudulent government grants. I only found this out after I put them on and

they did absolutely nothing. Found out they have no scientific backing at all!!!!!!!!"[31]

36.     But on EnChroma's own website, there are hardly any negative reviews.[32]



**Figure 7**

37.     This likely has to do with the fact that EnChroma's review system, Okendo,

provides EnChroma with the ability to accept or reject reviews as they wish.[33]

38.     Indeed, prior to the release of the MegaLag investigative journalism video in 2023,

EnChroma had only published two one-star reviews and declined to publish an authentic negative

review from the independent journalist, while accepting his false positive review.[34]

39.     Such manipulation of Defendant's review system furthers its deceptive marketing

campaign by creating the illusion of customer satisfaction.

40.     Finally, Defendant even went so far as to mislead the federal government into

funding nearly $1.2 billion in grants for the research and development of these glasses.

---

[30] *Id.*

[31] *Id.*

[32] ENCHROMA, https://enchroma.com/pages/reviews-1 (last accessed Feb. 21, 2025).

[33] *See* Stephen Dundas, *Getting Started With Review Moderation*, OKENDO, https://support.okendo.io/en/articles/1854709-getting-started-with-review-moderation (last accessed Feb. 21, 2025)

[34] *See* MegaLag, *supra* note 5, at 00:15:55-00:16:07.

EnChroma's co-founder subsequently admitted in an interview that the science included in the grant application wasn't real.[35]  This issue has since been raised with the National Eye Institute.[36]

41.     Thus, through this pervasive, false, and misleading advertising scheme, Defendant dupes consumers with a real disability into buying the Glasses under the hope that the Glasses will unlock a "whole new world of color."

42.     Notably, EnChroma uses the same trade dress and marketing claims for sales directly through the EnChroma website and third-party sellers like Amazon or Walmart.

**C.     Defendant's Glasses**

43.     Defendant manufactures, markets, and sells a number of different styles of Glasses for outdoor or indoor use.  The outdoor Glasses purportedly address either deuteranomaly or protanomaly, while the indoor versions purportedly address both.  Below is an example of the Glasses.



**Figure 8**

44.     Defendant markets and sells the Glasses through multiple distribution channels including, but not limited to, the EnChroma website, Amazon, and Walmart.

45.     All the Glasses are substantially similar in that all are wearable glasses that incorporate EnChroma's color vision deficiency technology, have the same functionality, are made the same way, have the same instructions, and are advertised the same way.

---

[35] *See* 21st Century Renaissance, *Of Glass, Color, and Light: Seeing Anew! With Don McPherson, Ph.D. (21st Century Renaissance, Ep. 2)*, YOUTUBE (Jan. 5, 2023), at 00:37:10-00:37:37, https://www.youtube.com/watch?v=CihKbe5tQsk.

[36] MegaLag, *EnChroma CEO Responds to my Expose (Part 3)*, YOUTUBE (Mar. 31, 2024), at 00:21:25, https://www.youtube.com/watch?v=oFqDsE2-aFo.

46.     According to EnChroma, the Glasses work by "selectively filter[ing] out wavelengths of light at the point where [color vision deficiency] confusion or excessive overlap of color sensitivity occurs."[37]  "EnChroma lenses alter the signal to the M (Green) and L (Red) photoreceptor cones in such a way that there is a greater color contrast along the so-called 'confusion line' for that individual."[38]

47.     EnChroma contends that this technology will "increase contrast between the red and green color signals to account for the overlap and alleviate symptoms of red-green color blindness for a richer, more colorful experience of the world."[39]



**Figure 9**

[37] *How Do EnChroma Color Blind Glasses Work*, ENCHROMA, https://enchroma.com/pages/how-enchroma-glasses-work#:~:text=How%20Do%20EnChroma%20Glasses%20Work,colorful%20experience%20of%20the%20world. (last accessed Feb. 24, 2025).

[38] *Id.*

[39] *Id.*

48.     Don McPherson, EnChroma's co-founder, says that by removing certain wavelengths of light, the filter pushes the overlapping wavelengths back apart so that "the signals to the two cones are closer to that of a normal visioned person and when it reaches the brain it's able to process the information correctly."[40]

49.     Thus, EnChroma contends that this then helps users to "see[] the full spectrum of color for the first time."[41]   However, this ignores the fact that the technology specifically removes certain wavelengths of color and therefore very much does not allow users to see the full spectrum of color.

### D.     The Glasses Are Incapable of Creating the Warranted Benefits

50.     EnChroma's technology only increases color contrast for the red-green color perception.  It does not work when one of the cones does not function or where a person has no perception of any color.  This is a fact that EnChroma does acknowledge at times, yet it still markets its glasses as if they treat such conditions.[42]

51.     But EnChroma often hides this fact in its misleading marketing campaign.  Indeed, one alleged EnChroma user says, "its not that I can't name [the colors], there's nothing there. That's grey, and that's grey, and that's grey."[43]   But what this user describes is complete color vision deficiency, meaning no perception of color, and that type of color blindness is entirely unaffected by EnChroma's glasses.

52.     This deception occurs repeatedly in EnChroma's marketing, such as in the black and white thumbnails on EnChroma's YouTube channel.  *See* Figure 10.

---

[40] EnChroma, *EnChroma Explained*, YOUTUBE (Feb. 9, 2021) at 00:01:34-00:01:52, https://www.youtube.com/watch?v=6pSJ0Pivt-g.

[41] *Accessibility and Color Deficiency: Color Blind Women in the Workplace and the World*, ENCHROMA, https://enchroma.com/blogs/beyond-color/accessibility-and-color-deficiency-color-blind-women-in-the-workplace-and-the-world (last accessed Feb. 24, 2025).

[42] *How Do EnChroma Color Blind Glasses Work*, *supra* note 37.

[43] EnChroma, *supra* note 21, at 00:00:25-00:00:33.



**Figure 10**

53.     Moreover, EnChroma contends that its technology is backed up by academic research showing that "wearing EnChroma glasses: [s]timulated the brains [*sic*] color vision center[,] [and] showed immediate and long-term improvement[, and] showed 3 to 5x improvement after 6 months."[44]



**Figure 11**

---

[44] ENCHROMA, *supra* note 2.

54.     However, the "research" EnChroma points to was not actually a full-length study; rather, it was a brief communication, which is a shorter type of research project and not peer reviewed.[45]  Nowhere in this brief communication was a claim that the EnChroma classes provided "3 to 5x improvement after 6 months."

55.     The one full-length study of the effectiveness of EnChroma's glasses is deeply flawed.[46]  First, the sample size was exceedingly small with only eight volunteers participating.[47]  Furthermore, one of the key authors of the study, Kenneth Knobloch, is a shareholder in EnChroma, thereby making this not an independent study.[48]  And investigative journalism called into question whether another author of the study, John Werner, also had a conflict of interest.[49]

56.     Even worse, the study hides in a separate supplement that is not easily accessible from the EnChroma website comments from the participants such as "I have heard of [these glasses] and I think it is a scam."[50]  Or, "[I'm] [n]ot wearing the glasses because I didn't notice any change."[51]

57.     Actual unbiased studies with larger representative samples have instead found that EnChroma's Glasses do not work.

---

[45] *See generally*, Jeff Rabin, et al., *Performance Enhancement in Color Deficiency with Color-Correcting Lenses*, THE ROYAL COLLEGE OF OPHTHALMOLOGISTS (2021), file:///C:/Users/RyanMartin/Downloads/s41433-021-01924-0.pdf.

[46] *UC Davis Eye Center Study: EnChroma Eyewear Enhances Color Perception*, ENCHROMA, https://enchroma.com/blogs/beyond-color/uc-davis-eye-center-study (last accessed Feb. 24, 2025).

[47] *See generally*, John S. Werner, Brennan Marsh-Armstrong, & Kenneth Knoblauch, *Adaptive Changes in Color Vision From Long-Term Filter Usage in Anomalous but Not Normal Trichromacy*, 30 CURRENT BIOLOGY (2020), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://enchroma-files.s3.us-west-1.amazonaws.com/Current+Biology+EnChroma+and+Neuroplasticity.pdf.

[48] *See id.*, at 5.

[49] MegaLag, *Exposing the Fake Science Behind Color Blind Glasses (Part 2)*, YOUTUBE (Dec. 21, 2023), at 00:27:10-00:28:32.

[50] John S. Werner, Brennan Marsh-Armstrong, & Kenneth Knoblauch, *Supplemental Information: Adaptive Changes in Color Vision From Long-Term Filter Usage in Anomalous but Not Normal Trichromacy*, 30 CURRENT BIOLOGY at 4 (2020), file:///C:/Users/RyanMartin/Downloads/mmc1.pdf.

[51] *Id.*

---

1    58.    A study done by the University of Granada on the EnChroma glasses concluded that

2    while the Glasses have the ability to increase the contrast between certain colors, ultimately the

3    Glasses "neither improve results in the diagnosis tests nor allow the observers with CVD to have a

4    more normal color vision."[52]  Moreover, this increase of contrast also comes at the expense of a

5    decrease in contrast of other colors.[53]

6    59.    Indeed, one of the authors of that study specifically said in an interview that it is

7    impossible for EnChroma's technology to help color blind people see new colors or in the same

8    way as a non-colorblind individual.[54]

9    60.    Moreover, that author also said that none of the forty-eight people who participated

10   in that study had an emotional reaction anything like the ones EnChroma advertises when they put

11   the glasses on for the first time.[55]  In fact, "the majority were a little bit disappointed on the effect.

12   So, it was not life changing at all for any of them."[56]

13   61.    Moreover, other scientists said that the glasses in no way have the ability to push the

14   skew of red and green back apart.[57]

---

[52] L. Gómez-Robledo, et al., *Do EnChroma Glasses Improve Color Vision for Colorblind Subjects?*, 26 OPTICS EXPRESS 28693, 28693 (2018), https://opg.optica.org/oe/fulltext.cfm?uri=oe-26-22-28693&id=399323.

[53] *Id.*; *see also* MegaLag, *supra* note 5, at 00:11:13-00:12:42.

[54] MegaLag, *supra* note 49, at 00:16:43-00:17:30.

[55] *Id.* at 00:18:43.

[56] *Id.*

[57] *Id.* at 00:20:28-00:20:48.

62.    Thus, on the whole the glasses have the ability to increase the contrast between some colors while decreasing the contrast of other colors.  However, the Glasses **do not allow users to see new colors**, like EnChroma falsely advertises in Figure 12 below.



**Figure 12**

63.    Nevertheless, Defendant has taken it upon itself to mislead people with a disability into buying their product under the perception that the Glasses will help cure their disability.

## CLASS ALLEGATIONS

64.    Plaintiff seeks to represent a Nationwide class defined as:

All persons in the United States who, within the applicable statute of limitations period, purchased a pair of the EnChroma Glasses (the "**Nationwide Class**").

65.    Plaintiff also seeks to represent a California Sub-class class defined as:

All persons in California, who within the applicable statute of limitations period, purchased a pair of the EnChroma Glasses (the "**California Subclass**").

66.     Specifically excluded from the Classes are: Defendant; Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures; entities controlled by Defendant; Defendant's heirs, successors, assigns, or other person or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors; the Judge assigned to this action; any member of the Judge's family and staff; Defendant's counsel; and Plaintiff's counsel.

67.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Nationwide Class and California Subclass (collectively, the "Classes") may expand or narrow by amended complaint.

68.     **Numerosity.**  The Members of the Classes are so numerous that individual joinder of each member is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members of the Classes.  Although the precise number of Class Members is unknown to Plaintiff at this time, it may be determined through discovery.

69.     **Commonality.**  Common questions of law and fact exist to all Members of the Classes and predominate over any questions affecting only individual Nationwide Class or California Subclass Members.  The common legal and factual questions include, but are not limited to:

    (a)   Whether Defendant made false and/or misleading statements to the public concerning the efficacy of the Color Vision Correction Claims of the Glasses;

    (b)   Whether Defendant's Glasses have the capability to produce the Color Vision Correction Benefits Defendant warrants;

    (c)   Whether Defendant omitted material information to the consuming public concerning the actual Color Vision Correction Claims of the Glasses;

    (d)   Whether Defendant's representations and partial representations were material to consumers;

    (e)   Whether Defendant's omissions concerning the Color Vision Correction Benefits of the Glasses were likely to deceive a reasonable consumer;

    (f)   Whether Defendant advertised the Glasses with the intent not to sell them as advertised;

(g)  Whether Defendant made and breached express and/or implied warranties to Plaintiff and the Classes concerning the Glasses' Color Vision Correction claims;

(h)  Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and the Classes; and

(i)  Whether Plaintiff and the Classes are entitled to damages.

70.    **Typicality.**  Plaintiff's claims are typical of the claims of the Members of the Classes in that the Class Members were deceived, or reasonably likely to be deceived, in the same way by Defendant's false and misleading advertising of the Glasses.  All Class Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

71.    **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

72.    **Predominance.**  Pursuant to Federal Rule of Civil Procedure 23(b), the common issues of law and fact identified above predominate over any other questions affecting only individual Members of the Classes.  Issues affecting the Nationwide Class and California Subclass fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing practices.

73.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would thus be virtually impossible for the members of the Classes to obtain effective redress on an individual basis for the wrongs committed against them.  Even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory

judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  A class action provides the benefits of adjudication of those issues on a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties.

<u>COUNT I</u>
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***

74.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in the preceding paragraphs of this complaint.

75.     Plaintiff brings this claim individually and on behalf of the Members of the Nationwide Class, or in the alternative the California Subclass against Defendant.

76.     Plaintiff and other Members of the Class are "consumers" within the meaning of Cal. Civ. Code § 1761(d).  By purchasing Defendant's Glasses, Plaintiff and the Members of the Class engaged in "transactions" within the meaning of Cal. Civ. Code § 1761(e) and 1770.

77.     Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Glasses are a "good" within the meaning of Cal. Civ. Code § 1761(a).

78.     Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Glasses.

79.     As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff and the California Subclass Members suffered injury and damages in an amount to be determined at trial.

80.     Defendant violated California's Consumer Legal Remedies Act ("CLRA") by engaging in the following unfair and deceptive business practices as alleged above and herein:

(a)     Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Glasses have characteristics they do not have;

(b)     Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Glasses are of a particular standard and quality despite being of another; and

(c)     Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Glasses with the intent not to sell as advertised.

81.     The CLRA was enacted to protect consumers against such practices.  The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

82.     On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

83.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of misleading statements and material omissions regarding the Glasses' purported benefits as alleged herein.

84.     Furthermore, Defendant's conduct took place primarily in California, and it's fraudulent and deceptive conducted emanated from its headquarters in Berkeley, California.

85.     Plaintiff and Class Members who purchased the Glasses, did so relying on Defendant's claims that the Glasses provided the warranted Color Correction Benefits.  Plaintiff and the Class Members would not have purchased the Glasses or would not have paid as much to purchase them, had they known that the Glasses were not, in fact, capable of providing the Color Correction Benefit Claims.  Plaintiff and the Class Members thus suffered monetary damages as a result of Defendant's false and deceptive advertising.

86.     On January 15, 2025, prior to the filing of this complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff and all other similarly situated purchasers.  Defendant received this letter at its Berkeley headquarters on January 22, 2025 and at its Delaware location on January 23, 2025.  Defendant has not taken corrective action.

87.     Plaintiff and the Class Members seek actual and punitive damages, restitution, reasonable costs and attorney's fees, and to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

1

**COUNT II**

2

**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

3

88.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations

4

contained in all preceding paragraphs of this Complaint.

5

89.     Plaintiff brings this claim individually and on behalf of the Members of the Class, or

6

alternatively the California Subclass, against Defendant.

7

90.     Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. &

8

Prof. Code § 17200 – 17210, by engaging in unfair, fraudulent, and unlawful business practices.

9

91.     Plaintiff has standing to pursue this claim because he suffered an injury-in-fact and

10

lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct.

11

Specifically, Plaintiff purchased the Glasses for his color-blind brother.  In doing so, Plaintiff relied

12

upon Defendant's false representations that the Glasses could provide the warranted Color Vision

13

Correction Benefits.  Plaintiff spent money in the transaction that he otherwise would not have

14

spent had he known the truth about Defendant's advertising claims.

15

***"Unfair" Prong of the UCL***

16

92.     A business act or practice is "unfair" under the UCL if it offends an established

17

public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

18

consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for

19

the business act or practice against the gravity of the harm alleged.

20

93.     Defendant's conduct constitutes an "unfair" business practice because, as alleged

21

herein, Defendant engaged, and continues to engage in, false, misleading, and deceptive

22

advertising campaigns that mislead consumers into believing that the Glasses they purchased will

23

provide the Color Vision Correction Benefits despite not being able to do so.

24

94.     Defendant's conduct, as alleged above and herein, was not motivated by any

25

legitimate business or economic need or rationale, other than to maximize its revenue and the

26

expense of consumers who sought skin regenerative benefits.  No legitimate reasons, justifications,

27

or motives outweigh the harm and adverse impact of Defendant's conduct on members of the

28

general consuming public.  Defendant engaged, and continues to engage, in such conduct solely to wrongfully extract monies from reasonable consumers, including Plaintiff, to which Defendant is not entitled.  Defendant could have, but has not, used alternative means of effecting its legitimate business needs, such as by properly disclosing that the Glasses merely affect perception in the contrast as colors, as well as by omitting the Color Vision Correction Claims entirely or discounting the Glasses to appropriately account for the Glasses' functionality.

95.    Defendant's conduct harms consumers and hurts market competition.  Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Members of the California Subclass because it violates consumers' reasonable expectations.  If Defendant had advertised its Glasses in a non-misleading fashion, Plaintiff and other Class Members could have considered other options for purchasing glasses.

96.    Furthermore, Defendant's conduct took place primarily in California, and it's fraudulent and deceptive conducted emanated from its headquarters in Berkeley, California.

***"Fraudulent" Prong of the UCL***

97.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

98.    Defendant has engaged in, and continues to engage, in, fraudulent business practices by knowingly representing to consumers that the Glasses they purchase will provide them with Color Vision Correction Benefits when they do not.  Defendant's conduct deceived Plaintiff and California Subclass Members who purchased the Glasses in reliance on Defendant's claims and is highly likely to deceive members of the consuming public because, as alleged above, the Glasses violate consumers' reasonable expectations regarding Color Vision Correction Benefits.  Such business practices lack utility and functions only to maximize Defendant's profits at the expense of its customers.  The gravity of the harm to Plaintiff and other CLass Members, who lost money or property by paying for the Glasses, far outweighs the benefit to Defendant's conduct.

*"Unlawful" Prong of the UCL*

99.   A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

100.   Defendant's business practices as alleged herein constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA").  Specifically, Defendant has unlawfully marketed and advertised its Glasses in violation of Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9), as detailed above.

101.   Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et. seq.* (the "FAL"), as described below, and provisions of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

102.   Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above and below, were the direct and proximate cause of financial injury to Plaintiff and other members of the California Subclass.  Defendant has unjustly benefited as a result of its wrongful conduct.  Accordingly, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and the Class; (b) disgorge all revenues obtained as a result of its violations of the UCL; and (c) pay attorneys' fees and costs for Plaintiff and the Class.

**COUNT III**
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code § 17500, *et seq.***

103.   Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

104.   Plaintiff brings this claim individually and on behalf of the Class, or alternatively the California Subclass Members, against Defendant.

105.   Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof Code §§ 17500, *et. seq.,* by publicly disseminating false, misleading, and/or unsubstantiated advertisements regarding its Glasses, as alleged above and herein.

106.    Plaintiff has standing to pursue this claim because he suffered an injury-in-fact and has lost money or property because of Defendant's false advertising.  Specifically, Plaintiff purchased the Glasses for his color-blind brother.  In so doing, Plaintiff relied on Defendant's false and misleading representations regarding the Glasses' capability to provide Color Vision Correction Benefits.  Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's claims.

107.    Defendant disseminated false and misleading advertisements to increase the sales of the Glasses.

108.    Defendant knew or should have known that the advertisements for its Glasses were false and/or misleading.

109.    Defendant knew or should have known that consumers, including Plaintiff and other members of the California Subclass, would believe that the Glasses were capable of providing the promised Color Vision Correction Benefits.

110.    Furthermore, Defendant's conduct took place primarily in California, and it's fraudulent and deceptive conducted emanated from its headquarters in Berkeley, California.

111.    Plaintiff and the Class Members have suffered harm as a result of Defendant's violations of the FAL because they paid monies for the Glasses that they would not have purchased but for Defendant's false and misleading advertisements.

112.    Accordingly, Plaintiff and members of the Class seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution of Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the FAL; and (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

## COUNT IV
### Breach of Express Warranty

113.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

114.    Plaintiff brings this action individually and on behalf of Members of the Nationwide Class and California Subclass against Defendant.

115.    Plaintiff brings this claim under the laws of the State of California.

116.    As the designer, manufacturer, marketer, distributor, and/or seller of the Glasses, Defendant issued an express warranty by representing to consumers that the Glasses would provide the Color Vision Correction Benefits but are unable to because they do not possess technological capacities necessary to produce such results.

117.    Defendant's representations were part of the basis of the bargain upon which the goods were offered for sale and purchased by Plaintiff and members of the Classes.

118.    As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they: (1) paid money for the Glasses that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Glasses they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Glasses they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiff and the Nationwide Class and California Subclass Members would not have purchased the Glasses or would not have paid as much as they did for them.

**COUNT V**
**Fraud**

119.    Plaintiff realleges and incorporates by reference each allegation set forth above as if fully set forth herein.

120.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California and all other states which have materially similar laws.

121.    At the time Plaintiff and members of the Classes purchased the Glasses, Defendant did not disclose, but instead concealed and misrepresented, that the Glasses did not have the ability to provide the Color Correction Benefits.

122.    Defendant affirmatively misrepresented the Glasses had the ability to allow color-blind individuals to see color.

123.    Defendant also knew that its omissions and misrepresentations regarding the Glasses were material, and that a reasonable consumer would rely on Defendant's representations and warranties (and corresponding omissions) in making purchase decisions.

124.    Plaintiff and Classes did not know—nor could they have known through reasonable diligence—about the true nature of the Glasses.

125.    Plaintiff and the Classes have reasonably relied on Defendant's misrepresentation (and corresponding omissions) in making their purchase decisions.

126.    Plaintiff and the Classes have a right to rely upon Defendant's representations (and corresponding omissions) as Defendant maintained monopolistic control over knowledge of the true quality of the Glasses.

127.    Plaintiff and members of the Classes sustained damages because of their reliance on Defendant's omissions and misrepresentations, thus causing Plaintiff and the Classes to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

128.    Defendant's omissions, as described above, upon which Plaintiff and members of the Classes reasonably and justifiably relied, were intended to and actually did induce Plaintiff and members of the Class to purchase the Glasses.  Defendant's fraudulent actions caused damage to Plaintiff and members of the Classes, who are entitled to damages and other legal and equitable relief as a result.

## COUNT VI
### Breach of Implied Warranty

129.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

130.    Plaintiff brings this claim individually and on behalf of the members of the Nationwide Class and California Subclass.

131.    Plaintiff brings this claim under the laws of the State of California.

132.    Defendant routinely engages in the manufacture, distribution, and/or sale of the Glasses and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

133.    Plaintiff and Members of the Nationwide Class and California Subclass were consumers who purchased Defendant's Glasses for the ordinary purpose of such products.  In the alternative, Defendant marketed the Glasses, and Plaintiff and Members of the Classes purchased the Glasses, for the specific purpose of being able to see color but received far less because the Glasses are incapable of providing such results.

134.    By representing that the Glasses would work, Defendant impliedly warranted to consumers that the Glasses were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

135.    However, the Glasses were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

136.    As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Nationwide Class and California Subclass were injured because they paid money for the Glasses that would not pass without objection in the trade or industry under the contract description.

## COUNT VII
### Unjust Enrichment

137.    Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of the complaint.

138.    Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass.

139.    Plaintiff brings this claim under the laws of the State of California.

140.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted by Fed. R. Civ. P. 8.

141.    Plaintiff and the Nationwide Class and California Subclass Members conferred benefits on Defendant by purchasing the Glasses.

142.    Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and the Members of the Classes who purchased the Glasses.  Retention of these monies under these

circumstances is unjust and inequitable because Defendant failed to disclose that the Glasses were not capable of producing the benefits promised because the Glasses do not operate with the technology required to produce such results, rending the Glasses unfit for their intended, marketed purpose. Those omissions caused injuries to Plaintiff and members of the Classes because they would not have purchased the Glasses had they known the true capabilities of the Glasses.

143.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the members of the Classes is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order Certifying the Nationwide Class and California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Nationwide Class and California Subclass;

(b)    Appointing Plaintiff's counsel to represent the Nationwide Class and California Subclass;

(c)    Declaring that Defendant's conduct violated the statutes and common law referenced herein;

(d)    Finding in favor of Plaintiff, the Nationwide Class, and California Subclass against Defendant on all counts asserted herein;

(e)    Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

(f)    Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing their unlawful practices as set forth herein, directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

(g)    Awarding Plaintiff, the Nationwide Class, and California Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees.

(h)     Ordering Defendant to pay pre-judgment interest on all amounts awarded;

(i)     Ordering injunctive relief requiring Defendant to cease all false and misleading advertising practices regarding the color vision deficiency correction claims;

(j)     Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Dated:  March 28, 2025                         **BURSOR & FISHER, P.A**.

By: ___*/s/ L. Timothy Fisher*_____
                      L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Luke Sironski-White (State Bar No. 348441)
Ryan B. Martin (State Bar No. 359876)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
                lsironski@bursor.com
                rmartin@bursor.com

**SINDERBRAND LAW GROUP, P.C.**
Greg Sinderbrand (State Bar No. 179586)
2829 Townsgate Road, Suite 100
Westlake Village, CA 91361
Telephone: (818) 370-3912
E-mail: greg@sinderbrandlaw.com

*Attorneys for Plaintiff*

**CLRA VENUE DECLARATION**

I, L. Timothy Fisher, declare as follows:

     1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff. Plaintiff McLaughlin resides in Angelus Oaks, California.  I have personal knowledge of the facts set forth in this declaration and if called as a witness, I could and would completely testify thereto under oath.

     2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California, as Defendant's headquarters are in this District. Additionally, Defendant advertised, marketed, manufactured, distributed, and/or sold the Product at issue to Class Members in this District.

     3.     I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this March 28, 2025.

                                     */s/ L. Timothy Fisher*
                                     L. Timothy Fisher